Last case this afternoon is case number 4-16-0624, People v. Timothy Hannah. Appearing for appellant is attorney Kawara Wilson and for the appellee is attorney Manson. Good afternoon. Ms. Kawara-Wilson, are you ready to proceed? You may. My name is Saloma Kawara-Wilson and on behalf of the Office of the State Appellate Defender, I represent Mr. Timothy Hannah. Mr. Hannah was charged with the unlawful disposal of methamphetamine manufacturing waste and with being a sexual predator or a child sex offender in a public park. On both charges, the State failed to prove all the elements of the offenses beyond reasonable doubt. On the first count, the methamphetamine manufacturing charge, in order to prove that Mr. Hannah was guilty of the unlawful disposal of methamphetamine manufacturing waste, the State had to prove beyond reasonable doubt that the burned bottles discovered in Weldon Springs State Park were in fact used in the manufacture of methamphetamine. To do so, the State relied on the testimony of Sgt. Campbell and that of Tracy Stodsdill, who was with Mr. Hannah at Weldon Springs. Sgt. Campbell testified that based on his observation of the debris and his experience, the burned bottles were methamphetamine manufacturing waste. However, since the bottles were ordinary soft drink bottles, a Mountain Dew bottle and a Gatorade bottle, Campbell's visual observations were not proved beyond reasonable doubt. This is why even the State refers to Campbell's initial identification of the bottles as mere suspicion. For example, if there was a charred box at the site that was roughly the shape and size of a super fed box, Campbell's testimony that based on his experience, that box was methamphetamine manufacturing waste would equally be inadequate. Campbell's further tests on the bottles were similarly not dispositive. His testing of the bottles consisted of using pH paper to test for the presence of an acid or a base. He testified that the base would be lye, but offered no confirmation of this, especially when his pH test showed a reading of 8 on a scale of 0 to 14, and lye would ordinarily be between 12 and 14. Field tests can be used to identify controlled substances. Sorry, field tests that are used to identify controlled substances sometimes are sufficient in a case to prove beyond a reasonable doubt the identity of that controlled substance. However, that field test has to be conclusive and can't just be speculative. For example, in People v. Ayala, where they tested for the presence of heroin and said it might be heroin, and the court ultimately concluded that that was insufficient proof beyond a reasonable doubt. If you have a test that says this controlled substance is cocaine, but that doesn't get all the way to the lab to get tested, that could come in if the court finds that that's conclusive. But what do we have in this case? In this case, all the tests that Sergeant Campbell tells us is the presence of a base and an acid in two bottles that are sold commercially containing substances that could be bases or acids. This is especially, the field test tells us nothing of the manufacture of methamphetamine, because it fails to identify the specific base and the specific acid. When the testimony at trial was that the acid used in making methamphetamine would be sulfuric acid and the base would be lye. Therefore, just the simple presence of a base and an acid doesn't prove beyond a reasonable doubt that that is what is contained in these bottles. Even in the light most favorable to the state, to make that inference would be to speculate. And this court, you cannot draw an inference that is speculation even under the standard overview that is in the light most favorable to the state. The state's other witness, Tracy Startstill, provided testimony that was even more speculative as to the identity of the burnt bottles. She only testified that she smelled fuel in the car. She never saw the bottles and she never saw anything else that could have led to the conclusion that the burnt bottles were methamphetamine manufacturing waste. In fact, when she was asked if she smelled anything else in the car that was consistent with what she had previously smelled as methamphetamine manufacturing waste, she didn't answer the question. Therefore, Campbell's testimony alone, or in conjunction with Tracy's testimony, failed to prove beyond a reasonable doubt that the bottles were methamphetamine manufacturing waste or contained methamphetamine manufacturing waste. And Mr. Hanna's convictions on that count should be reversed. On the second charge, in order to prove that Mr. Hanna was a child sex offender or sexual predator in a public park, the state was required to prove that Mr. Hanna had a prior conviction for an enumerated sex offense and that he was in a public park. The state failed to prove both these elements beyond reasonable doubt. Section 5-9.41b of the statute under which Mr. Hanna was charged makes it unlawful for a sexual predator or child sex offender to knowingly be present in any public park, building, or real property comprising of a public park. The statute then defines a public park as a park, forest, preserve, bikeway, trail, or conservation area under the jurisdiction of the state or unit of local government. The statute doesn't define what a park is as within that definition, but at the court, People v. Morgan from the 2nd District defines a park as a piece of ground in a city or village set aside for ornament or to afford the benefit of air, exercise, or amusement. Here the state failed to prove both that Weldon Springs was a park or that it was under the jurisdiction of a local unit of government or the state. Or that it was even open to the public. Usually the state can prove that a particular area is a park using the testimony of the officers who are familiar with the area. In this case, all the state had to do was ask several questions of either Officer Wartz or Sergeant Campbell regarding what kind of activities took place in this area or what jurisdiction this area was under, a state or local unit of government. The state could also have sought a stipulation from the defense or called another witness to establish this very information, but the state failed to do so. The state seems to rely solely on the name, Weldon Springs State Park. But even other courts that have addressed the issue of churches have always found the evidence sufficient because there was more, because an officer testified to the use of the church, to being familiar with the area, and to knowing what kind of activities were happening there. The Supreme Court recently decided people be Newton. Neither of us had briefed on this issue because the case came out last week. And I'd be willing to discuss more how Newton doesn't really change this. Newton doesn't say that the name alone is enough because even in Newton, there were numerous other factors that led the court to reach its conclusion that there was a church at that location, including the fact that the officer testified very detailed information as to what the first Christian church was. On his conviction, in order to prove that Mr. Hannah was a child sex offender or sexual predator, the state was required to prove that he had previously been convicted of certain enumerated offenses of which the possession of child pornography is. The standard process of proving a prior conviction in Illinois is the introduction of a certified copy or an authenticated copy of the conviction. The state failed to prove or to provide that evidence in this case. The state did not have a certified copy of Mr. Hannah's conviction from Florida. Counsel, didn't Mr. Hannah's attorney tell the jury that it should find him guilty of that charge as fast as they could sign their names to the verdict form? He did. And I think because I think the language he uses is he knows he's not supposed to be in the park. He signed Exhibit 1 and says he's not supposed to be in the park. The sex offender registration form lists out some of the prohibitions against Mr. Hannah due to his status. And one of them is that he shouldn't live within 500 feet of a park. So counsel could have been referring to the fact that Mr. Hannah knew he shouldn't be there based off of that. We can't just conclude based on the record that he was referring specifically to that the state had met its burden as to the conviction. Well, so when he said you should find guilty of that charge as fast as you can sign your names to it, he didn't mean Weldon Springs? Is that what your argument is? No, I think you're referring to the conviction, the prior conviction, and that counsel's statement to the jury might have been enough to maybe I understood your question incorrectly. Well, I guess my question would be isn't this a forfeiture, a waiver, when the defense admits it to the jury that, yeah, I'm guilty? I mean, through counsel, I understand that. Well, Mr. Hannah never makes, he never makes, you can't waive a reasonable doubt argument, really. The state is always required to meet its burden. Counsel's words were ill-advised. And because Mr. Hannah doesn't make any affirmative, you know, confessions or gives up this right for the states to have to prove I don't think it's fair based off of counsel's statement during argument as opposed to even during the proofs of the case to hold that against Mr. Hannah. The sex offender registration form presented by the state was not sufficient by itself to prove this prior conviction because, again, it was not a certified copy of conviction. This court has followed that rule requiring the certified copy of conviction in prior cases in Gober and in Free, and it should continue to do so here. In addition, the sex offender registration form is insufficient because it only contains Mr. Hannah's signature, and therefore you can look at it as an admission, in which case the court would be, the state would be required to have corroboration independent of that form to prove that Mr. Hannah does have that prior conviction. And there was no such independent, verifiable proof in this case. And finally, on that issue, the state argues that there was a stipulation, but there was no stipulation. There was no stipulation between when those parties were talking to the trial court, and there was no stipulation presented to the jury. So the jury could not consider any stipulation when finding that question in the jury was the ultimate trial fact. Mr. Hannah raises several issues of counsel's ineffectiveness. But in argument, unless the court has further questions, I will concentrate on his failure to request an accomplice instruction and his failing to move to sever the charges. All the evidence presented in the case against Mr. Hannah for the unlawful disposal of methamphetamine manufacturing waste was equally applicable to Tracy Sogstill. In order for Sogstill to be deemed an accomplice, all that was required was probable cause to believe that she could have been charged either as an accomplice or a principal. And here, there is no difference between any of the evidence between the two of them. The only difference really is the fact that Mr. Hannah has an additional charge, and the jury gets to hear additional evidence of the fact that he has convictions for possession of child pornography. Tracy was present at the park. She testified to knowing how to manufacture methamphetamine. She knew what a one-pot cook was, and she even provides the extra information about the pennies, which is, according to Sgt. Cabell, something that's not common in this area. But she knows that it's used, and she provides the testimony that it's used as an additional kick to the recipe. There was no trial strategy in failing to ask for the instruction, because counsel's strategy all along during trial was to paint her as an incredible witness and as the real culprit. So the instruction would have warned the jury that Sogstill's testimony should be regarded with suspicion. In a close case such as this, that would have made the difference in which way the jury decided the issue of credibility between her and Mr. Hannah. This is why counsel's failure to move to sever the charges was so prejudicial to Mr. Hannah. The jury was distracted by this allegation that Mr. Hannah was a registered child sex offender, and that it convicted him, and may have convicted him, based on that, for their lawful disposal charge, based on the fact that they had that information, even though the state hadn't proven all the elements beyond a reasonable doubt. In order to move to sever the case, the facts of the case have to show that the offenses are not part of a comprehensive transaction, or that a defendant would be prejudiced by being forced to defend against multiple charges in a single trial. It is under this second category that Mr. Hannah's case falls, because the jury would not have had to find out about his prior conviction for the possession of child pornography, 13 counts, in a trial solely for their lawful disposal of methamphetamine manufacturing waste. In terms of impeachment, that information wouldn't have come in for two reasons. One, the state did not have that certified copy of conviction, and therefore could not have used it to impeach Mr. Hannah in that trial, in a separate trial. On the record, the state says they did not have this information. Trial counsel should have known this from the fact that he had received no certified copy during discovery. Secondly, even if the state somehow had this certified copy of conviction, the trial court would have had to weigh the probative value of that information coming in through impeachment against the prejudice that would have been presented by the fact that the jury would now have had to hear that he has a conviction for 13 counts of possession of child pornography. The failing to ask for severance was also not trial strategy, and if it was, it was unsound trial strategy. Counsel should have known that, again, the state did not have that certified copy of conviction, and that in our weighing of the prejudice versus the probative value that the court would have ruled in Mr. Hannah's favor. So it is for these reasons, I mean, unless the court has any further questions or any arguments, that we ask this court to reverse Mr. Hannah's convictions outright, or in the alternative, to reverse and remand for a new trial based on the ineffective assistance claim. Mr. Hannah stands on the arguments. The rest of the argument is made in his brief, with the exception of Argument 4, which is the fines and fees argument, which People v. Barra is now instructing. Thank you. All right. Thank you. Mr. Manchin. Response? Afternoon, Your Honor. May it please the court, counsel. In this case, the evidence was sufficient to allow the jury to find the unreasonable doubt that the defendant was involved in the disposal of methamphetamine waste. We have an expert witness who testified to seeing these objects and identifying them as being consistent with methamphetamine waste and saying that he tested the contents and the contents were consistent with what he knows to be methamphetamine waste. The defendant on appeal has argued that, hey, there are other substances that have similar pHs, but that evidence was never before the jury. The only evidence that the jury heard was the testimony of this officer that he took the pH readings and the pH readings that he saw were consistent with what he has found in other and in his experience is consistent with methamphetamine waste. That's true of the defendant's claim that the pH of lye should be greater than what the officer found because the evidence as to what the pH of lye was not a matter of record. He was never asked and the defendant presented no testimony and nobody presented any testimony as to what the pH of lye is. We also don't know what the pH of lye is when it's been diluted or combined with the other chemicals used in methamphetamine so that it could have been lowered from what the defendant claims is the pH for lye to the pH found by the officer. Then you get to the fact that you have two bottles, you have bottles burnt in the middle of nowhere in the middle of the morning. Common Sense tells you that you're not going to be out there burning bottles for no reason at all and that given the defendant's testimony that he knew that his girlfriend was going out there to dispose of or knew or believed his girlfriend was going out there to dispose of meth and her testimony that the defendant said, hey, let's go to the park and dispose of this methamphetamine or let's go dispose of this meth waste. That was her testimony. He said he asked her to take her to the park to dispose of this stuff. She smelled fuel, took her dog for a walk and came back and saw something burning. The defendant's testimony was we were going to the park to dispose of methamphetamine waste. I took the dog for a walk and she was the one that burned it. Taking all the evidence in the light most favorable to the state, the jury could clearly conclude that one, this was in fact methamphetamine waste and two, that the defendant was involved, knowingly involved in the disposal of this waste. With respect to the park, I submit that just the name of the park by itself, in Foster, which is cited in the brief, the court held that the name of the church alone, without any other information sufficient to prove that it is in fact a church for persons of distance. I think the same rule should apply to the name of a park where this name is as stated in open court by everybody, including the defendant, that it was State Park. I think even in the recent case by the Supreme Court, they indicated that just proving the name of the church would be sufficient because of the way the statute defined it, saying that a church or synagogue or other place usually used for religious purposes, saying that by listing church or synagogue, simply stating the name of the church or synagogue would be enough. But then they went on to say that in that particular case there was more than just the name because they had the officer that testified to his personal knowledge of it. Better practice might be to have somebody testify, yeah, I know this park, I go there fishing all the time, it's used for camping or whatever, but it's not required to simply under foster the name itself. And to say that the jury has to ignore common knowledge and common information is ridiculous. To say that a juror in this vicinity would not know that this State Park is a State Park and could not infer that it was a State Park from everybody's reference to it as a State Park is simply ridiculous. As I mentioned, I'm having a hard time with any justification for counsel not to file a motion to sever. It would seem pretty clear to me that the evidence concerning the prior sex offense was very prejudicial and it does not appear to me should have come into evidence had there been a motion to sever on the other charge. Well, at the time the decision was made not to seek severance. It was not known or could not have been known or there's nothing in the record to show that the counsel knew that the State would not have the certified copy by the time of trial. Well, as pointed out by opposing counsel, you have discovery and that had not been submitted in discovery. Well, I don't believe, don't know that there is anything in record showing whether or not the prior conviction, actual certified copy was included in discovery. I was not the attorney that handled the case so I did not see the record, but there's nothing in the briefs here stating as to what was disclosed in discovery before trial. And as far as disclosing a defendant's prior conviction, I don't know that you're required to do more than disclose that the defendant in fact has the conviction, but you have to in fact include the certified copy of the conviction in the discovery that's simply informing the defendant that, hey, we have these convictions that we can use to convict you, to impeach you, would be enough under the discovery rules. So can you go back? Still related to that, but if he chose not to testify, that wouldn't have been used, correct? That's correct, but I think counsel fully anticipated that the defendant was in fact going to testify. Well, I'm talking about in separate trials. Well, as far as the trial for the disposal of the meth waste, the trial counsel could very well have anticipated that the defendant was going to testify, and that was in fact the trial's strategy. The case law cited in the brief says that it can be a matter, strategy, or judgment to go for an all or nothing attempt in this matter, was it one that no reasonable attorney would make? I submit it's not, that it is not uncommon for these type of decisions to be made, and it was a decision he made, maybe it was a wrong one, but that is not the standard. I also submit that combining the two did not result in any prejudice to the defendant. Even though in a separate trial the jury would not have learned about his prior, assuming in a separate trial the jury would not have heard about the defendant's prior conviction, I do not think the result would have been any different. The evidence of the defendant's guilt, given his testimony, given the testimony of his girlfriend, given the circumstances under which the waste was discovered, that the results would have been the same in separate trials, so there's simply no prejudice to the defendant from the mistaken strategy. I do note that according to the reply brief, the state only provided a copy of the circuit clerk records from Florida, and that the trial court had previously ordered the state to disclose any documents it intended to use against the defendant, and in responding to that they just provided the clerk records from Florida. I guess I had missed that part when I was trying to read through this. But again, it's a judgment call on the part of the counsel, and mistakes in judgment of strategy are not ineffective assistance of counsel unless it amounts to no representation at all. And I submit that that standard has not been met in this particular case. Okay, I'm not sure I follow you. What was the strategy? As in the one case cited in the brief, an all or nothing strategy. That it is an all or nothing strategy. I think it was, I believe it was the Gatsky where they talk about... I think I understand what an all or nothing strategy is, but I'm not sure I see it here. I mean, look at the argument. Get in there and sign the bond verdict for him to find him guilty automatically. That's not consistent with all or nothing, is it? Again, it's at what time do you make the decision for the severance? Do you make it at the end of the trial, or do you make it before? And at pre-trial, it could have been a decision, and again, this might be one where it would be better to send it back for a post-eviction hearing under Veach. Just saying, hey, we know what counsel did. We don't know why he did it. Maybe it would be better to go back to allow counsel to explain, okay, what was your thinking when you did this? The Supreme Court doesn't seem real fond of some of our decisions where we have sent it back for a PC. I know, but the Supreme Court has said that that is an available remedy where you can't tell whether it's strategy or there's no basis for the decision. You're unable to determine on the face of this record as to what's going on. What's your thought as to a plausible trial strategy that would encompass not moving the severance? Well, one plausible one is simply to avoid two separate trials on two separate days, with the belief that whichever way I go, this prior conviction is coming in. That's one plausible explanation for it, that I am going to be facing the same facts and same evidence in two separate trials. Let's try them together. That's not an unreasonable way to approach it. And again, how does it come in in a separate disposal of methamphetamine? Well, it would come in as impeachment. But the defendant doesn't testify in that case? Yeah, if he doesn't testify, but in this case it was anticipated that the defendant was going to testify. But the court also could say it's too prejudicial, it outweighs the probative value. That does not seem unreasonable to me that a court would make that decision. Because when the jury hears about the prior sex offenses, that certainly isn't going to help on that meth disposal charge, in my view anyway. Well, I still say that the prejudice has not been established, because given the evidence before this, that even in separate trials, without evidence of the defendant's prior conviction in a separate trial, the result would have been the same. The evidence just clearly shows the defendant that there was methamphetamine waste disposal, and that the defendant was involved in that. Both through his statements to the police before trial, the testimony of the officer regarding what this waste is, the testimony of the girlfriend saying, yeah, the defendant asked me to take him to this park to dispose of some meth waste. Counsel, but that brings me to my next question. What about the fact that we didn't have an accomplice instruction as it relates to the girlfriend, and quite frankly, the case was just as compelling against her? Well, the jury was given the instruction as to how do you weigh the testimony of a witness. But not the accomplice instruction. Well, the accomplice witness adds nothing to that instruction other than the words, or adds little to that instruction than the statement. But it gives you guidance on how you're to weigh the testimony of someone in this unique position, that being the position of an accomplice, right? Versus how you weigh the credibility of any witness. Well, in, there's case law that says that the failure to request a accomplice witness instruction does not amount to prejudice where the jury has been given the standard instruction. Because the jury already has all the information, basically all the information it needs to weigh the credibility of that particular witness. So I think that whatever prejudice there is from the, you said there's case law that says. I'm trying to find it. It's cited in the brief that the giving of the. The failure to give the accomplice instruction. Okay, the accomplice witness. I can't find it right now. State the proposition again. It just simply that because the jury was given the usual instruction on how to consider the testimony and credibility of the witness, which refers to the person's interest, bias, and the like, that the failure to request the additional instruction on an accomplice witness was not prejudicial, or did not amount to an effective assistance. It seems a lot different than telling the jury that the testimony is subject to suspicion and should be considered by you with caution, which is the accomplice testimony, right? Instruction. But if there's a case that says. Yeah, there's. Okay, it was people versus McAllister. I don't remember if it was effective. The failure to tender an accomplished jury instruction was cured by the normal instruction as to bias and interest or prejudice. And I said that that's cited on page 47 of the brief, that any prejudice from the lack of a specific instruction does not amount to prejudice in the circumstances of this case, given the defendant's own testimony, which implicates him in the crime, at least, you know, one way to look at this evidence is that both the girlfriend and the defendant were guilty of the offense, and both of them were aware of it and involved in it, and each of them tried to avoid the guilt by pointing to the other as the main actor. Because the defendant's testimony is that he, basic testimony was that he went to the park with his girlfriend knowing she was going to dispose of methamphetamine waste there. They've done that before, that he went to walk their dog and when he came back there was a fire going on. Given the defendant's admissions before trial that he disposed of the waste that night, I think that the only verdict the jury could reach was that the defendant was guilty of that offense of disposing of methamphetamine waste. Thank you. Thank you, Ms. Mann. Ms. Guard-Wilson, rebuttal argument? I will begin my rebuttal with addressing McAllister since it's what came up last. The state's citation to McAllister is not completely accurate. In McAllister, the court specifically, the Illinois Supreme Court specifically noted that, we agree that the general instruction on witness credibility may not by itself be enough to cure an errant omission of an accomplice witness instruction. So it rejects the state's statement that it does. Otherwise, the witness instruction would be rendered essentially meaningless since the general instruction on witness credibility is given in most criminal cases. McAllister is distinguishable because there the court found the cure, that the general instruction cured the failure to give the accomplice instruction because of the overwhelming evidence against the defendant. That's not the situation in this case. And to correct a point, Ms. Stodstill doesn't testify that Mr. Hanna told her to take her to Weldon Springs so he could burn some methamphetamine manufacturing waste. She testified he asked her to take him there to burn trash. She never mentions methamphetamine manufacturing waste. The evidence to Justice Holder White's point between the evidence that was against Mr. Hanna is exactly the same evidence that was against Ms. Stodstill. And in her case, based on her own testimony, this case was even stronger against her because she evidences some specific knowledge as to how to manufacture methamphetamine, lists out all the ingredients, including the presence of the pennies. Therefore, she has more evidence against her than Mr. Hanna had against him. And no one identifies one person versus the other as being the person who was burning the trash. As to Sgt. Campbell being an expert witness who was testifying consistent with his experience, all he testified to was the presence of a base in an acid. Yes, the jury did not hear what the usual lie would be or what lie would be once it had been mixed with the other ingredients, but this court is looking at the evidence as to whether it was sufficient. And it was simply not sufficient to say there's a presence of a base in an acid and therefore that's methamphetamine manufacturing waste. The name of the park alone is not sufficient, even with People v. Newton, because People v. Newton, first, it's addressing a different question, really, because it's addressing whether the state is required to prove use of the church on the date of the offense. So it's slightly different. And what the court does in that case is say that the state doesn't have to prove that the church was being used as a church just because of the name church. And then the court goes on to say, so what we have left is to determine the sufficiency of the evidence. And they go on to then look through the facts and find that because the office had testified to so many facts that established that that was a church, that the evidence was sufficient. Here we have nothing except the name, Weldon Springs State Park, and especially where the jury is given a specific instruction to make a specific finding as to jurisdiction, it's simply not enough to say that the name satisfied the elements of the offense. The decision on the motion to sever is made before trial. Therefore, counsel should have made that decision long before trial. And the reason that this court shouldn't move the determination of this issue to a post-conviction is because the record is extremely clear that counsel just simply fails to do this. There was no trial strategy. The all-or-nothing trial strategy does not fit with the facts presented in the case, especially because, as Justice Tanna pointed out, he essentially concedes on the sex offender charge during his closing argument. So suppose it had been severed and on the methamphetamine charge, defendant testified because that's how he's going to beat that charge. He's going to prove that his girlfriend instead was the one that was burning the methamphetamine refuse. How does he keep the sex offense charge out? The original, the Florida charges, or the other charge? The conviction for possessing child pornography. Again, because one, the state doesn't have the certified copies. But secondly, because the court doing away in probative value versus prejudice would have kept it out because it was more prejudicial to tell the jury that he has 13 counts of child pornography simply for impeachment. And as to the other charge, that his presence in the park coming in at a superior trial for the methamphetamine manufacture, that wouldn't have come in either because that was a Class A misdemeanor, which would likely not have been used to impeach him at the methamphetamine trial. So for these reasons, Your Honor, we ask that you reverse Mr. Tanna's conviction because the state failed to meet its burden and in the alternative, remand for a new trial on the ineffective assistance claims. Thank you, counsel. The case will be taken under advisement and a written decision shall issue at the court stands in recess.